[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

———————————————

No. 14-13508

———————————————

EPA-1:14-EPA

CAHABA RIVERKEEPER, et al.,

Petitioners,

versus

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY,

Respondent,

ALABAMA DEPARTMENT OF
ENVIRONMENTAL MANAGEMENT,

Intervenor.

———————————————

Appeal from the Environmental Protection Agency

———————————————

(November 25, 2015)

Before JORDAN and JULIE CARNES, Circuit Judges, and ROBREÑO,[*] District Judge.

JORDAN, Circuit Judge:

The National Pollutant Discharge Elimination System, a part of the Clean Water Act, 33 U.S.C. § 1251 et seq., is a "federal permit program designed to regulate the discharge of polluting effluents" into the Nation's waters. *Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 489 (1987). Upon request, the Environmental Protection Agency may transfer NPDES permitting authority to a state. *See* 33 U.S.C. § 1342. "If [this] authority is transferred, then state officials—not the federal EPA—have the primary responsibility for reviewing and approving NPDES discharge permits, albeit with continuing EPA oversight." *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 650 (2007).

The EPA may also withdraw the permitting authority of a state if it fails to comply with applicable statutes and regulations. Before it may do so, the EPA must hold a public hearing and give the state a reasonable time (not to exceed 90 days) to take "appropriate corrective action." *See* 33 U.S.C. § 1342(c)(3); 40 C.F.R. § 123.64(b)(1).

---

[*] The Honorable Eduardo Robreño, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

## I

Alleging 26 program deficiencies, a number of environmental organizations filed petitions with the EPA seeking the commencement of proceedings to withdraw Alabama's authorization to administer the NPDES. After receiving a response from the Alabama Department of Environmental Management, as well as additional memoranda from the organizations, the EPA issued a lengthy "interim response." In that response, the EPA found that 22 of the alleged deficiencies did "not warrant initiation of program withdrawal proceedings." As to the remaining issues, the EPA expressed "significant concerns about the adequacy" of Alabama's NPDES program, but said it would defer a decision on the petitions with respect to those issues and would "work with ADEM and give ADEM an opportunity to address [its] concerns before [the] EPA determines whether it is necessary to order the commencement of program withdrawal under 40 C.F.R. § 123.64(b)." *See* A.R. 006814. So, as things stand now, certain issues remain unresolved, and the EPA has not definitively ruled on the petitions as a whole or decided whether to commence withdrawal proceedings.

The environmental organizations have appealed the EPA's findings on some of the 22 alleged deficiencies that did not warrant the initiation of program withdrawal proceedings. The EPA and ADEM have moved to dismiss the appeal,

3

arguing that we do not currently have jurisdiction to review any of the findings set forth in the interim response.

## II

The Administrative Procedure Act permits judicial review of "[a]gency action made reviewable by statute and final agency action for which there is no adequate remedy in a court," but provides that "preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on review of the final agency action." 5 U.S.C. § 704. The organizations do not assert that the EPA has taken "final agency action" within the meaning of § 704, *see* Br. for Appellants at 4-6 & n.2, but contend that we have jurisdiction pursuant to 33 U.S.C. § 1369(b)(1)(D), which provides for appellate review of an EPA action "in making any determination as to a State permit program submitted under [33 U.S.C. §] 1342(b)." *See generally Home Builders*, 551 U.S. at 655 (explaining that § 1369(b)(1)(D) "allows private parties to seek direct review of the EPA's determinations regarding state permitting programs in the federal courts of appeal").

Exercising plenary review, *see, e.g., C.P. v. Leon County School Bd. Fla.*, 483 F.3d 1151, 1156 (11th Cir. 2007), and recognizing that this is a close case, we hold that the EPA's partial findings in the interim response are not immediately

reviewable under § 1369(b)(1)(D).  As a result, we dismiss the appeal without prejudice.

## III

Our sister circuits are divided as to whether §1369(b)(1), as a general matter, requires final action by the EPA.  *Compare Iowa League of Cities v. EPA*, 711 F.3d 844, 862–63 & n.12 (8th Cir. 2013) (declining to read finality requirement into § 1369 in case involving subsection (b)(1)(F)), and *Penn. Dep't of Envtl. Res. v. EPA*, 618 F.2d 991, 994 (3d Cir. 1980) (explaining, in case involving subsections (b)(1)(A) and (b)(1)(E), that § 1369 "is not in terms limited to final agency action"), *with Nat'l Pork Producers Council v. EPA*, 635 F.3d 738, 755 (2d Cir. 2011) (holding, in case involving subsections (b)(1)(E) and (b)(1)(F) of § 1369, that EPA guidance letters "must constitute an agency final action" to be reviewable).  But none of their cases have addressed § 1369(b)(1)(D), the provision at issue here.

## A

The critical words in § 1369(b)(1)(D) are "any determination."  Given Supreme Court and Eleventh Circuit precedent, however, we must interpret these words against a long-standing presumption.

For about a century it has been the rule that, "with respect to . . . regulatory bodies, . . . mere preliminary or procedural orders are not within the statutes

providing for [appellate] review." *Fed. Power Comm'n v. Metro. Edison Co.,* 304 U.S. 375, 385 (1938) (citing cases standing for that proposition). There is, therefore, a "strong presumption . . . that judicial review will be available only when agency action becomes final." *Bell v. New Jersey,* 461 U.S. 773, 778 (1983). In *Bell,* for example, the Supreme Court held that final agency action was required under a provision of the Elementary and Secondary Education Act of 1965 allowing for judicial review of "actions of" a federal board, even though that provision did not refer to finality. *See id.* at 777–78. And in *Jim Walter Resources, Inc. v. Fed. Mine Safety and Health Review Comm.,* 920 F.2d 738, 743 (11th Cir. 1990), where we examined a statute allowing judicial review of "an order" of a federal commission, we ruled that a final order was required: "Although the statute uses the term 'order' rather than 'final order,' this omission alone is insufficient to overcome the general presumption that judicial review of administrative action is available only when such decisions have become final." In our view, § 1369(b)(1)(D) is not the type of provision that overcomes the strong presumption that judicial review is available only when there is final agency action.

Starting with the ordinary meaning of the text, *see Sebelius v. Cloer,* 133 S.Ct. 1886, 1893 (2013), the word "determination" itself connotes a final decision made at the end of a deliberative process. One dictionary defines the word as the

"settlement of a suit or controversy by the authoritative decision of a judge or arbiter," or a "bringing or coming to an end; *a termination*." 1 SHORTER OXFORD ENGLISH DICTIONARY 659 (5th ed. 2002) (emphasis added). Another explains that it is "a decision arrived at by thought and investigation; *[a] conclusion*." WEBSTER'S NEW WORLD COLLEGE DICTIONARY 393 (4th ed. 2000) (emphasis added).

We acknowledge, of course, that the word "determination" is preceded by the word "any," but we do not think "any" takes away from "determination" the general notion of a conclusive and irreversible decision. *See United States v. Illinois Central R. Co.,* 244 U.S. 82, 84–85, 89 (1917) (holding that federal courts lacked jurisdiction to review an order of the Interstate Commerce Commission setting a hearing on a contested matter, despite federal statute providing for jurisdiction in cases to "enjoin, set aside, annul or suspend in whole or in part any order" of the ICC, because the order in question "had no characteristic of an order, affirmative or negative," and was "a mere incident in the proceeding"). At oral argument, counsel for the environmental organizations conceded that the EPA could, at any time, revisit or amend any of its findings as to the 22 alleged deficiencies. Counsel for the EPA likewise concurred that the agency had the power to revise its findings. For example, if the organizations presented evidence that the data relied upon by the EPA was outdated, the agency could reconsider its

findings.  This fluidity strongly suggests that, even as to the findings made so far by the EPA, true finality is lacking.  *Cf. Heckler v. Cheney*, 470 U.S. 821, 831 (1985) (noting the "general unsuitability for judicial review of agency decisions to refuse enforcement").

Stated differently, the EPA's partial findings do not "mark the 'consummation' of the agency's decision making process," as certain matters are still under review and the EPA has yet to come to a decision on whether to commence program withdrawal proceedings.  *See Bennett v. Spear*, 520 U.S. 154, 178 (1997) (citations omitted).  The EPA's interim report is also not one "by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'"  *Id.* at 177–78.  The EPA has not determined, after a public hearing, that Alabama has failed to properly administer the NPDES program.  *See* 33 U.S.C. § 1342(c)(3).

Though it involved different facts, our decision in *Save the Bay, Inc. v. EPA*, 556 F.2d 1282 (5th Cir. 1977), indicates that judicial review is permitted under § 1369(b)(1)(D) only when the EPA has come to a definitive resolution of a petition.  In that case, an environmental organization argued in part on appeal that the EPA should revoke a state commission's NPDES authority because of how badly the commission had mishandled a request for a certain permit.  *See id.* at 1287–88.  Because the organization had never formally presented its request to the EPA—it

8

had merely sent a letter providing notice of its intent to file suit—the agency argued that it had not made any determination concerning revocation for a circuit court to review. *Id.* at 1288. We agreed with the EPA, and our rationale bears quoting at length:

> [T]he agency does not dispute that, had it undertaken review of the state program and held the public hearing before revocation under . . . § 1342(c)(3), this court would have original jurisdiction to review [the] EPA's decision to revoke or not revoke NPDES authority. Such a decision would be a 'determination as to a State permit program' within this court's purview under . . . § 1369(b)(1)(D). [The] EPA's contention is rather that the administrative process regarding revocation has not moved sufficiently forward to generate a 'determination' for this court to review. The agency at oral argument expressed the position that full administrative development should precede litigation over claims that a state's program permit authority should be withdrawn. . . . [W]e agree and dismiss this portion of the petition without prejudice to its refiling after the administrative process has had an opportunity to run.

*Id. See also id.* at 1289 ("To ensure orderly development of the issues and the record, as well as to promote the full and objective application of the agency's expertise, [the] EPA should be given the opportunity independent of litigation to formulate a response to [the organization's] allegations regarding the [state] program."). *Save the Bay* is instructive, and consistent with the approach to administrative finality we take today.

**B**

Additionally, the partial findings in the EPA's interim report do not meet the Supreme Court's "pragmatic" interpretation of administrative finality, which

9

"focus[es] on whether judicial review at the time will disrupt the administrative process." *Bell*, 461 U.S. at 779. In our view, an appeal at this time, while the EPA is still addressing certain areas of concern and before it has made a decision on whether to commence program withdrawal proceedings, will indeed disrupt the administrative process.

The Clean Water Act "anticipates a partnership between the States and the Federal Government," *Arkansas v. Oklahoma*, 503 U.S. 91, 101 (1992), and in such "cooperative federalism," *Am. Farm Bureau Fed. v. EPA*, 792 F.3d 281, 288 (3d Cir. 2015), the EPA may well decide that it is best to conduct a holistic assessment of a state's NPDES program before it makes a decision on whether to begin withdrawal proceedings. The EPA's use of strong language in an interim report, together with an admonition that serious problems must be corrected, might provide the best opportunity for effective remedial steps on the part of a state. Here an appeal in midstream may well have a negative impact on the give and take between the EPA and ADEM on the remaining areas of concern.

We note also that most courts passing on the issue have ruled that the EPA's decision as to whether to commence withdrawal proceedings is a discretionary one. *See, e.g.*, *Sierra Club v. EPA*, 377 F.Supp.2d 1205, 1208–09 (N.D. Fla. 2005) ("[W]hile there is a split of authority, the better reasoned district court decisions specifically addressing § 1342(c)(3) have held that it does not impose on [the] EPA

10

a mandatory duty to withdraw a state's NPDES authority."). *Accord Save the Bay*, 556 F.2d at 1285 (The "EPA *may* withdraw its approval of a state program upon determining, after notice and an opportunity to respond, that the program is not being administered in compliance with the requirements of . . . 33 U.S.C. § 1342.") (emphasis added). If ADEM fails to correct the problems identified in the interim report, the findings made so far by the EPA as to the other alleged deficiencies— which in and of themselves did not warrant the commencement of withdrawal proceedings—could warrant reconsideration. As we see it, allowing an appeal from an interim report like this one has a tendency to disrupt the delicate administrative process envisioned by the Clean Water Act.

## IV

The EPA has not denied the petitions filed by the organizations or decided whether to commence program withdrawal proceedings. It has only issued an interim report addressing some, but not all, of the deficiencies alleged by the organizations, and even those partial findings are subject to reconsideration. Because the EPA has not made a "determination" within the meaning of §1396(b)(1)(D), we do not have jurisdiction to review those portions of the interim report with which the organizations disagree, and therefore dismiss the appeal without prejudice. The organizations will, of course, be able to appeal once the

11

EPA resolves the outstanding matters and makes a definitive decision on the relief requested by the petitions.

**APPEAL DISMISSED WITHOUT PREJUDICE.**