[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-10210
_____

Agency No. FAA 2013-0988


CLAYTON COUNTY, GEORGIA,
CLAYTON COUNTY PUBLIC SCHOOLS,
FOREST PARK, GEORGIA,
RIVERDALE, GEORGIA,
LOVEJOY, GEORGIA,
MORROW GEORGIA,
LAKE CITY, GEORGIA,
JONESBORO, GEORGIA,
COLLEGE PARK GEORGIA,

Petitioners,

versus

FEDERAL AVIATION ADMINISTRATION,

Respondent.

_____

Petition for Review of a Decision of the
Federal Aviation Administration
_____

(April 24, 2018)

Before WILLIAM PRYOR and JULIE CARNES, Circuit Judges, and ANTOON,[*] District Judge.

JULIE CARNES, Circuit Judge:

Title 49 U.S.C. § 47133 generally prohibits "[l]ocal taxes on aviation fuel" from being spent on anything but aviation. In 2014, the Federal Aviation Administration clarified that it interpreted § 47133's revenue-use restriction to apply to all state and local governments, regardless of whether they own or operate an airport. Notwithstanding § 47133's prohibition, Clayton County imposes a tax on aviation fuel sold at Hartsfield-Jackson Airport and shares the revenues with the cities within Clayton County—College Park, Forest Park, Jonesboro, Lake City, Lovejoy, Morrow, and Riverdale. These entities spend those tax revenues on local municipal projects unrelated to aviation. The Clayton County Public School system also levies a sales tax on aviation fuel sold at Hartsfield-Jackson and spends the proceeds on education. Although Hartsfield-Jackson is partially located in

_____

[*] Honorable John Antoon II, United States District Judge for the Middle District of Florida, sitting by designation.

2

Clayton County, none of these taxing entities—Clayton County, the cities within Clayton County, or Clayton County Public Schools (collectively "Petitioners")—owns or operates the airport.

In 2015, Petitioners submitted a plan to the FAA describing how they intended to come into compliance with the FAA's recently clarified interpretation of § 47133. In 2016, Petitioners backtracked from the conciliatory stance they took in 2015 and instead submitted an "Amendment" challenging the FAA's position that Petitioners could not legally spend tax revenue from aviation fuel on local projects unrelated to aviation. The FAA responded in a letter, restating the position it took in its 2014 policy clarification and expressing concern that Petitioners might not be in compliance. The FAA asked Petitioners to contact the FAA to discuss potential offsets and other methods for Petitioners to achieve compliance.

Petitioners filed this lawsuit challenging the FAA's interpretation of § 47133 as set forth in the FAA's 2016 letter. We conclude, however, that we lack jurisdiction to consider the merits of Petitioners' arguments because the FAA's letter does not constitute final agency action.

## I.    BACKGROUND

### A.    Congress Limits the Permissible Uses of Aviation Fuel Tax Revenues to Aviation-Related Projects.

In 1996, Congress enacted 49 U.S.C. § 47133, which generally prohibits local aviation fuel tax revenues from being spent on anything other than aviation. Pub. L. No. 104-264, 110 Stat. 3213, 3271 (1996). Section 47133(a) provides that:

> Local taxes on aviation fuel (except taxes in effect on December 30, 1987) or the revenues generated by an airport that is the subject of Federal assistance may not be expended for any purpose other than the capital or operating costs of—
>
> > (1) the airport;
> >
> > (2) the local airport system; or
> >
> > (3) any other local facility that is owned or operated by the person or entity that owns or operates the airport that is directly and substantially related to the air transportation of passengers or property.

In 1999, the FAA issued a policy statement interpreting the scope of § 47133. The FAA interpreted § 47133 to apply "to all airports that have received Federal assistance." 64 Fed. Reg. 7696, 7698 (1999). And it stated broadly that "State or local taxes on aviation fuel (except taxes in effect on December 30, 1987) are considered to be airport revenue subject to the revenue-use requirement." *Id.* at 7716. The FAA did not discuss whether its interpretation made any distinctions between taxes levied by "the owner or operator of the airport" (the airport

4

"sponsor"), *id.*, and taxes levied by an entity that does not own or operate the airport (a "non-sponsor").

In 2013, the FAA issued a notice that it proposed to clarify its 1999 policy statement to make clear that the FAA interpreted § 47133's revenue-use restriction to apply to all state and local governments, including non-sponsors. 78 Fed. Reg. 69789, 69793 (2013) (proposing to clarify that "[t]he Federal limits on use of aviation fuel tax proceeds apply at an airport that is the subject of Federal assistance . . . regardless of the state or local jurisdiction imposing the tax"). The FAA received comments on its proposed clarification, including a comment from the Georgia Departments of Revenue and Transportation. Georgia "disagree[d]" with the FAA's interpretation that "any entity that imposes or administers a tax on aviation fuel may also be sanctioned even though it is neither an airport sponsor nor the recipient of federal assistance." And Georgia expressed concern about how the FAA's interpretation would impact Hartsfield-Jackson Airport and Clayton County specifically. Although Hartsfield-Jackson is partially within Clayton County and Clayton County taxes aviation fuel sales that occur there, Clayton County is not the airport sponsor because it neither owns nor operates Hartsfield-Jackson. So Georgia was concerned that "under the FAA's new view . . . . Clayton

5

County could . . . be sanctioned even though it is not the sponsor of Hartsfield-Jackson and is not the recipient of federal assistance for Hartsfield-Jackson."

After considering this and other comments, the FAA issued an order in 2014 codifying its proposed clarification.  The FAA's amended policy states that § 47133 applies "to any tax imposed on aviation fuel by either a State government or a local government taxing authority whether or not acting as a sponsor or airport owner or operator."  79 Fed. Reg. 66282, 66288 (2014).  Because the FAA acknowledged that its earlier position on § 47133's applicability to non-sponsors may have been unclear, the FAA gave state and local governments three years to come into compliance and set a compliance deadline for December 8, 2017.  *Id.* at 66286.  The FAA also encouraged state and local governments to submit action plans to enable the FAA and regulated parties to work together to achieve compliance.  *Id.*

### B.    Petitioners Spend Aviation Fuel Tax Revenues on Projects Unrelated to Aviation.

Petitioners tax aviation fuel sold at Hartsfield-Jackson Airport even though Petitioners neither own nor operate the airport and do not receive federal assistance for it.[1]  Since 1994, Clayton County has imposed a sales tax on aviation fuel sold at

---

[1] The City of Atlanta, which lies outside Clayton County, is the airport sponsor for Hartsfield-Jackson.  Clayton County once had an ownership interest in a different regional airport, but sold that interest in 2012.

6

Hartsfield-Jackson.  And since 1997, Clayton County Public Schools has levied its own tax on such sales.  The revenues from these taxes are spent on local municipal and school projects unrelated to aviation.

In 2015, after the FAA clarified that it interpreted § 47133 to apply to non-sponsors' aviation fuel tax revenues, Petitioners submitted an action plan to the FAA describing their tax scheme and plan to comply with § 47133.  Petitioners described the difficulty, practically and legally, of updating their tax scheme to exclude revenues from sales taxes on aviation fuel sold at Hartsfield-Jackson.  As an alternative, they proposed to offset their aviation fuel tax revenues with the value of other taxes Petitioners do not impose on Hartsfield-Jackson (such as property taxes) and in-kind services provided to the airport (such as police and municipal court services).

A year later, Petitioners sent a letter to the FAA that Petitioners labeled as an "Amendment" to their plan.  The letter did not change the proposed action plan, but instead argued that the FAA's interpretation that § 47133 applied to non-sponsor local governments was erroneous and unlawful.

The FAA responded in a letter (the "Letter") two months later on November 17, 2016.  It is this Letter that Petitioners contend constitutes final agency action. In the Letter, the FAA states that it "disagrees" with Petitioners' interpretation of

7

§ 47133 and "believe[s] federal law prohibits all state and local governments from diverting aviation fuel tax revenues for any non-aviation related purpose." And the FAA observes that Petitioners' use of aviation fuel tax revenues "to support a variety of public services, including public education and infrastructure, is the use of the tax to fund 'unrelated municipal services and activities . . .' contrary to the express purpose of the federal ban on the diversion of aviation fuel tax revenue." The FAA also states that it is "concerned that [Petitioners] will not be in compliance with the aviation fuel tax revenue use requirements by December 8, 2017." To remedy this, the FAA advises Petitioners that the agency is "available to discuss with [them] in more detail permissible offsets of diversions of aviation fuels tax revenues, and other potential means to achieve compliance." Finally, the FAA states that the Letter "represents the present view of the FAA's Office of Chief Counsel based on the facts presented" by Petitioners, "does not constrain future FAA action or opinion," and is only an "advisory response"—not "final agency action."

In December 2016, after receiving a letter from Georgia congressman David Scott about § 47133's applicability to Petitioners, the FAA sent a letter to Congressman Scott confirming that it interpreted § 47133 to apply to all state and

8

local governments, and that Petitioners should pursue other offsets or legislative remedies to comply with § 47133.

Petitioners filed this lawsuit under 49 U.S.C. § 46110(a) challenging the FAA's interpretation of § 47133 set forth in the Letter.

## II.    DISCUSSION

To be judicially reviewable under 49 U.S.C. § 46110(a), an FAA order must be final. *Green v. Brantley*, 981 F.2d 514, 519 (11th Cir. 1993);[2] *see also City of Oxford v. FAA*, 428 F.3d 1346, 1349 n.2 (11th Cir. 2005) ("49 U.S.C. § 46110(a) grants this court jurisdiction to review final orders of the FAA."). To be final, two requirements must be met. "First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *U.S. Army Corps of Engineers v. Hawkes Co., Inc.*, 136 S. Ct. 1807, 1813 (2016) (quoting *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997)). We must also take into account "pragmatic" concerns, focusing "on whether judicial review at th[is] time

---

[2] *Green* addressed 49 U.S.C. § 1486(a), an earlier codification of 49 U.S.C. § 46110(a). Act of July 5, 1994, Pub. L. No. 103-272, 108 Stat. 745.

will disrupt the administrative process." *Riverkeeper v. EPA*, 806 F.3d 1079, 1083 (11th Cir. 2015) (quoting *Bell v. New Jersey*, 461 U.S. 773, 779 (1983)).

Petitioners argue that the FAA's Letter constitutes final agency action in two different ways. They contend that the Letter (1) sets forth a new, binding interpretation of 49 U.S.C. § 47133 and (2) reflects that the FAA has decided that Petitioners' tax scheme violates § 47133 and that the FAA will enforce its interpretation of § 47133 against Petitioners. Neither position is persuasive.

Petitioners first argue that the Letter constitutes final agency action because it sets forth a new interpretation of § 47133: that is, it applies to non-sponsors like Petitioners. They contend that the FAA's earlier 2014 policy clarification did not define "non-sponsor," established only that § 47133 applied to "certain" non-sponsors, and generally did not indicate that Petitioners would be affected.

Whether the Letter established a new interpretation or merely restated the FAA's earlier interpretation matters because, to be final, the challenged agency action "must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Hawkes*, 136 S. Ct. at 1813 (quotation marks omitted). An agency's restatement of an already-existing policy or interpretation does not, on its own, determine any rights or obligations and imposes no legal consequences. Then-Judge John Roberts best explained this in a case where the

10

D.C. Circuit considered facts substantially similar to those here:  a regulated party presented its interpretation of the EPA's regulations, and the EPA stated in a response letter that it disagreed.  *See Indep. Equip. Dealers Ass'n v. EPA*, 372 F.3d 420, 422–25 (D.C. Cir. 2004).  The D.C. Circuit held that the EPA's letter was not final agency action because it "merely restated . . . [the] EPA's longstanding interpretation," so the letter "neither announced a new interpretation of the regulations nor effected a change in the regulations themselves."  *Id.* at 427.  "By restating [the] EPA's established interpretation . . . the EPA Letter tread no new ground.  It left the world just as it found it, and thus cannot be fairly described as implementing, interpreting, or prescribing law or policy."  *Id.* at 428 (emphasis omitted); *see also General Motors Corp. v. EPA*, 363 F.3d 442, 449–51 (D.C. Cir. 2004) (holding that a letter from an agency that "reflect[ed] neither a new interpretation nor a new policy" did not "impose new obligations").

Here, the Letter merely restates the FAA's interpretation of § 47133 that was established two years earlier in the FAA's 2014 policy clarification.[3]  The 2014 FAA order adopting the clarification states numerous times that § 47133's revenue-use restriction applies to all local governments, sponsors and non-sponsors

---

[3]  Petitioners do not challenge the FAA's 2014 policy clarification, likely because such a challenge would be untimely.  *See* 49 U.S.C. § 46110(a) (a petition "must be filed not later than 60 days after the order is issued" unless "there are reasonable grounds for not filing by the 60th day").

alike.  For example, it states that "§ 47133(a) imposes a limitation on the use of local taxes on aviation fuel, *regardless of whether the tax is imposed by a sponsor or non-sponsor*."  79 Fed. Reg. at 66285 (emphasis added).  Elsewhere, it states that the FAA interprets § 47133 "to obligate *non-sponsor* State and local governments to use proceeds from aviation fuel taxes for certain purposes."[4]  *Id.* (emphasis added).  And the amended policy states that § 47133 applies "to any tax imposed on aviation fuel by either a State government or a local government taxing authority whether or not acting as a sponsor or airport owner or operator."[5]  *Id.* at 66288.

Although the clarification does not expressly define "non-sponsor," the meaning is clear.  The FAA's earlier 1999 order, which the 2014 policy clarification modified, defines "sponsor" as "the owner or operator of the airport that accepts Federal assistance and executes grant agreements or other documents

---

[4]  *See also, e.g.*, 79 Fed. Reg. at 66286 ("The amendment we adopt today is a final decision . . . . [and] binds the FAA . . . as well as airport sponsors and non-airport sponsors (including a State, a political subdivision of a State, and a political authority of at least 2 States) covered by this Policy."), 66287 (discussing "enforcing compliance with § 47133 by non-sponsor State and local governments").

[5]  *See also* 79 Fed. Reg. at 66287 (stating, without qualification, that "State or local taxes on aviation fuel (except taxes in effect on December 30, 1987) are considered subject to the revenue-use requirements in . . . [§] 47133"), 66288 ("The Federal limits on use of aviation fuel tax proceeds apply at an airport that is the subject of Federal assistance . . . whether or not the airport is currently subject to the terms of an AIP grant agreement, and regardless of the State or local jurisdiction imposing the tax.").

12

required for the receipt of Federal assistance."  64 Fed. Reg. at 7716.  Thus, a non-sponsor is an entity that does not own or operate the airport and does not execute federal grant agreements.

And the clarification's passing reference to § 47133 applying only to "certain non-sponsors," 79 Fed. Reg. at 66285, does not muddy its meaning.  The phrase is most naturally read as a reference to § 47133's grandfather clause.  *See* 49 U.S.C. § 47133(a) (grandfathering in "taxes in effect on December 30, 1987").  In the background section summarizing the FAA's clarification, the FAA's order notes that § 47133's revenue-use requirement applies to "certain State and local government taxes on aviation fuel," namely "proceeds from both new taxes and to existing taxes that do not qualify for grandfathering from revenue use requirements."  79 Fed. Reg. at 66283.  When read in context, the reference to "certain" non-sponsors does not suggest that there was ambiguity in the FAA's interpretation of § 47133 as to whether it applied to non-sponsors, including Petitioners.

In fact, before filing this lawsuit, Petitioners and others had acknowledged that the FAA's policy clarification interpreted § 47133 to apply to non-sponsors, including Petitioners.  Specifically, before the FAA issued its clarification, the Georgia Departments of Transportation and Revenue filed a comment recognizing

13

that "under the FAA's new view . . . . Clayton County could . . . be sanctioned even though it is not the sponsor of Hartsfield-Jackson and is not the recipient of federal assistance for Hartsfield-Jackson." And, after the clarification was issued, Petitioners themselves acknowledged that the FAA interpreted § 47133 to apply to non-sponsor local governments, including them. Petitioners' action plan recognized that "[t]he policy amendment requires that State and local taxes on aviation fuel be subject to the airport revenue use restrictions." And Petitioners explained that they submitted an action plan because they "collect local taxes on aviation fuel that . . . per the FAA Policy, are required to be transitioned to full compliance."

Thus, the FAA's Letter merely restates its interpretation of § 47133 that was established two years earlier in its policy clarification. In the Letter, the FAA "disagree[s] with [Petitioners'] contention that the federal prohibition on the diversion of aviation fuel tax revenue for non-aviation purposes only applies to state or local governments who received federal airport improvement grants or are an airport sponsor." Instead, the FAA states that it "believe[s] federal law prohibits all state and local governments from diverting aviation fuel tax revenues for any non-aviation related purpose." The Letter also recognizes that the FAA's interpretation was originally established in its 2014 policy clarification. Because

14

the Letter only restates that earlier interpretation, the Letter does not carry any legal consequences for Petitioners and cannot be final in this regard. Any legal consequences of the FAA's interpretation of § 47133 flow from the 2014 policy clarification—not the Letter sent two years later.

Second, Petitioners contend that the Letter is final because it determines that the FAA will enforce § 47133 against Petitioners. Hence, Petitioners claim, they risk significant civil penalties if they fail to follow the Letter. We have recognized, however, that an agency's observation that a party's practices may potentially violate the law does not necessarily mark the culmination of the agency's decisionmaking process so as to determine a party's legal rights or obligations. For example, we addressed an "interim response" from the EPA that expressed "significant concerns about the adequacy" of Alabama's pollutant discharge permitting program in *Riverkeeper*, 806 F.3d at 1080. The EPA's letter stated that the EPA would "work with [Alabama] and give [Alabama] an opportunity to address [the EPA's] concerns" before the EPA determined whether or not to withdraw Alabama's authority to administer the program. *Id.* We held that the EPA's letter was not final agency action because the EPA had not "come to a decision on whether to commence program withdrawal proceedings," and the letter itself carried no legal consequences as the EPA "ha[d] not determined, after a

15

public hearing, that Alabama ha[d] failed to properly administer" the program as required for withdrawal under federal law. *Id.* at 1082–83.

*Riverkeeper* governs here, and we hold that the Letter is not final agency action in the sense that it determines that Petitioners have violated the law or threatens enforcement. The Letter reveals that the FAA has not conclusively determined that Petitioners are in violation of § 47133. It states that the FAA is "concerned that [Petitioners] will not be in compliance with the aviation fuel tax revenue use requirements by December 8, 2017." And it advises Petitioners that the FAA is "available to discuss with [them] in more detail permissible offsets of diversions of aviation fuels tax revenues, and other potential means to achieve compliance." The Letter concludes by stating that it "represents the present view of the FAA," "does not constrain future FAA action or opinion," and is only an "advisory response" that "does not constitute a final agency action." And just as the EPA's interim response in *Riverkeeper* could not create legal consequences unless the EPA followed the statutory requirements for withdrawal, the Letter by itself does not determine Petitioners' rights or obligations. It is "beyond any doubt that further administrative action" is required before Petitioners face actual consequences. *See Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1238 (11th Cir. 2003). Indeed, at oral argument, Petitioners acknowledged both

16

that the Letter does not direct Petitioners to do anything except follow the FAA's earlier policy clarification and that the Letter does not threaten enforcement. Thus, it is not a final agency action.

This conclusion is consistent with the pragmatic concerns at play here, which focus "on whether judicial review at th[is] time will disrupt the administrative process." *Riverkeeper*, 806 F.3d at 1083 (internal quotation marks omitted). First, judicial review of the Letter would interfere with the agencies' ability to consult with and advise regulated parties about how to comply with federal law and regulations. The Letter only sets forth Petitioners' pre-existing obligation to comply with the FAA's interpretation of § 47133. If a court intervened now, it might mean that regulated parties could bring lawsuits whenever an agency advises a party of its already-existing obligations. Such a result would discourage agencies from offering advisory guidance which in turn would harm regulated parties who appreciate and rely on such guidance. This prospect would "quickly muzzle any informal communications between agencies and their regulated communities - communications that are vital to the smooth operation of both government and business." *Indep. Equip. Dealers*, 372 F.3d at 428. Second, judicial intervention at this stage would interfere with agencies' discretionary authority over whether to bring enforcement actions. The Letter makes clear that

17

Petitioners and the FAA are (or at least were at the time) in ongoing discussions about Petitioners' compliance with § 47133. If a court intervened, it would force the agency to litigate over what may be a preliminary conclusion made without a full grasp of the relevant facts. This could "well have a negative impact on the give and take between" agencies and those they regulate. *Riverkeeper*, 806 F.3d at 1083–84.

In holding that we lack jurisdiction to consider Petitioners' challenge to a letter, we note that Petitioners have, and had, other avenues to challenge the FAA's interpretation of § 47133. For example, if the FAA brings an enforcement action in the future, Petitioners will be able to raise their claims then. *See* 5 U.S.C. § 703 ("Except to the extent that prior, adequate, and exclusive opportunity for judicial review is provided by law, agency action is subject to judicial review in civil or criminal proceedings for judicial enforcement."). And Petitioners could have challenged the FAA's interpretation of § 47133 when the 2014 policy clarification was originally issued. *See* 49 U.S.C. § 46110 (allowing a party to challenge a final FAA order within sixty days after it is issued). It was Petitioners who chose not to challenge the 2014 policy clarification at a time when such a challenge would have been timely.

18

## <u>CONCLUSION</u>

In the end, Petitioners' lawsuit is both too late and too early.  It comes too late to challenge the FAA's policy clarification issued in 2014, and it comes too early to challenge an FAA enforcement action that may never happen.  Because the Letter is not final agency action, we **DISMISS** the petition for lack of jurisdiction.